# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL ACTION** |
| **v.** | : | |
| | : | **No. 11-256** |
| **JANETTE PEREZ, et al.** | : | |

## <u>MEMORANDUM</u>

**Schiller, J.**                                                                 **August 5, 2011**

A superseding indictment charges Janette Perez with conspiracy, theft of mail, and presenting false claims against the government via fraudulent tax refund checks.  Perez seeks to suppress evidence that federal agents obtained from her Toyota 4Runner during a search of her home.  She has also moved to prevent the Government from introducing mailboxes the agents discovered in her basement.  The Court conducted hearings on Perez's motion to suppress on July 8 and 14, 2011.  For the reasons stated below, the Court will deny Perez's motions.

## I.      BACKGROUND

On March 23, 2011, the U.S. Postal Inspection Service obtained a warrant to search Perez's home at 3005 Hellerman Street in Philadelphia.  (Gov't's Opp'n to Def.'s Mot. to Suppress Ex. A [Search Warrant].)  The warrant authorized the agents to seize "documents and other items concerning or reflecting social security numbers," among other documents and records relevant to tax fraud.  (*Id*.)  It described the area to be searched as "the property or premises known as 3005 Hellerman Street, Philadelphia, Pennsylvania, 19149, a two-story brick and stone row home located three doors from the corner of Battersby and Hellerman Streets."  (*Id*.)  An attachment to the warrant provided two pictures of the front of the home and also referenced a gazebo on the property.  (*Id*.)

Postal Inspector Mary Fitzpatrick prepared the search warrant application. (July 8, 2011 Hr'g Tr. 16.) Earlier in her investigation, she had identified a mail route that appeared to service a number of non-existent addresses. (*Id*. at 20.) Postal inspectors "seeded the mail" with decoy checks and observed that the mail carrier assigned to that route did not return the decoy checks. (*Id*. at 20-21.) During a subsequent interview with law enforcement, the mail carrier admitted to working with a man named Jose, who had asked her to steal checks from the mail. (*Id*. at 21.) Fitzpatrick identified this man as Jose Rivera. (*Id*.)

Rivera worked as Perez's handyman and had a key to her home. (*Id*. at 21, 43.) He implicated Perez in the mail theft scheme and provided his key to Fitzpatrick and her colleagues. (*Id*. at 21.) The agents executed the warrant on March 24, 2011, entering Perez's home with the key they had obtained from Rivera. Perez and her boyfriend were present in the home when the agents entered. (*Id*. at 24-25.)

During his conversations with law enforcement prior to the search, Rivera informed the agents that Perez owned vehicles including a "brand new white Toyota 4Runner." (*Id*. at 28, 47.) Fitzpatrick testified that she did not request specific authorization to search the vehicle because it did not "dawn on [her] to put it in the warrant." (*Id*. at 50.) Nevertheless, the agents saw the vehicle in Perez's driveway when they arrived at her home. (*See, e.g.*, July 14, 2011 Hr'g Tr. 17, 51.)

Leo Hughes, an agent assigned to the Internal Revenue Service's Criminal Investigation Division ("IRS CID"), waited at the rear of Perez's home to ensure that no one left through the back door while the other agents executed the search warrant. (*Id*. at 49-51.) He then saw the 4Runner, parked "immediately adjacent to the rear entrance of the home." (*Id*. at 51.) Fitzpatrick eventually went outside and walked around the vehicle with Hughes and another IRS CID agent, Jeffrey Brown.

(July 8, 2011 H'rg Tr. 29-30.)  She saw two boxes in the 4Runner's cargo compartment, but could discern only computer equipment and file folders in one box whose lid was ajar.  (*See id*. at 30.) Brown suggested that Fitzpatrick take a closer look.  (*Id*.; *see also* July 14, 2011 Hr'g Tr. 27.) Peering through the 4Runner's tinted rear windows, Fitzpatrick then noticed Hispanic names and Puerto Rican social security numbers on the file folders' labels in the open box.  (July 8, 2011 Hr'g Tr. 30.)  Fitzpatrick explained that tax refund schemes often involve the use of social security numbers issued to citizens of Puerto Rico.  Puerto Rican citizens are generally not required to file federal tax returns; thus, using their social security numbers reduces the risk of duplicate returns that might alert the IRS to the existence of a tax fraud scheme.  (*See id*. at 19.)  These social security numbers begin with the numbers 580 through 584, among others.  (*Id*. at 20.)

The agents, including Brown, Hughes and Fitzpatrick, agreed that the names and numbers on the file folders indicated that there might be evidence of tax fraud in the 4Runner.  (July 14, 2011 Hr'g Tr. 28.)  However, Fitzpatrick believed that their search warrant did not give them authority to search the 4Runner.  (July 8, 2011 Hr'g Tr. at 32-33.)  They discussed obtaining another warrant, but ultimately decided to call Assistant United States Attorney Richard Zack regarding their authority to search the vehicle.  (July 14, 2011 Hr'g Tr. at 28-29.)  Zack, the Deputy Chief of the U.S. Attorney's Office's Economic Crimes Division, was involved in the underlying investigation and warrant application.  (*See* July 8, 2011 Hr'g Tr. 69-70.)

Zack advised the agents that they had probable cause to search the 4Runner without a warrant.  (*Id*. at 77-78.)  He also testified at the suppression hearing that, in his view, the search was lawful "even before they saw the box in the car because the car was in — was on the premises and they had probable cause to search the premises." (*Id*. at 78.) Zack clarified that he felt the 4Runner was within

3

the scope of the warrant the agents already had because it was on the premises.  (*Id.* at 85.)

After the agents' conversation with Zack, Hughes spoke with Perez and asked her for the keys to the 4Runner.  (*Id.* at 57.)  He informed her that the agents "had a valid federal search warrant for the premises.  The vehicle was parked on the premises, and therefore we were covered under the warrant to search the vehicle."  (*Id.*)  Perez then turned over the keys and the agents searched the car. (*See, e.g.*, *id.*)

## II.    STANDARD OF REVIEW

The movant bears the burden of proving, by a preponderance of the evidence, that the evidence in question should be suppressed. *United States v. Johnson,* 63 F.3d 242, 245 (3d Cir. 1995) (citing *United States v. Acosta,* 965 F.2d 1248, 1256 n.9 (3d Cir. 1992)).  "However, once the defendant has established a basis for his motion, *i.e.*, the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable." *Johnson*, 63 F.3d at 245.

## III.    DISCUSSION

### A.    Perez's Motion to Suppress

The Government initially conceded that the agents conducted a warrantless search of the 4Runner.  (*See, e.g.*, July 8, 2011 Hr'g Tr. 86-87.)  Having reevaluated its position, it now argues in the alternative that the warrant covered the 4Runner because the vehicle was on the premises identified in the warrant at the time of the search.  (Gov.'s Second Mem. in Opp'n to Def.'s Mot. to Suppress 16.)  Perez also characterizes the warrant as a "premises" warrant, but asserts that the

4

premises described in the warrant did not extend to the 4Runner. (*See* Def.'s Mem. of Law 1.) She

does not otherwise challenge the warrant's validity. (*See* Def.'s Mot. to Suppress 2.)

The Court is not bound by the Government's concessions. *See United States v. Kepner*, 843

F.2d 755, 763 n.6 (3d Cir. 1988); *see also United States v. Miller*, 822 F.2d 828, 832 (9th Cir. 1987)

(observing that courts are "not bound by the government's erroneous view of the law"). In fact, the

agents' search of the 4Runner was within the scope of their warrant for Perez's property. The Court

thus need not reach the parties' other arguments.

The Third Circuit has not discussed the lawfulness of vehicle searches pursuant to "premises

warrants" which do not specifically mention automobiles. *Cf. United States v. Menke*, 468 F.2d 20,

22 (3d Cir. 1972) (analyzing search of car as warrantless seizure where "area for search set forth" in

agents' warrant "was limited to the house and did not include the automobile").[1] A number of other

courts, however, have concluded that a valid warrant for a "premises" generally permits the search

of any vehicles owned by the resident that are located on the property. *See, e.g., United States v.

Reivich*, 793 F.2d 957. 963 (8th Cir. 1986) (citing *United States v. Percival*, 756 F.2d 600, 612 (7th

Cir. 1985)) (additional citations omitted) (noting that vehicles except for "the vehicle of a guest or

other caller" are included within scope of a warrant authorizing a premises search); *United States v.

Silva*, 593 F. Supp. 2d 316, 318 (D. Mass. 2009) (citing *United States v. Patterson*, 278 F.3d 315, 318

(4th Cir. 2002)) (additional citations omitted). In this vein, the Fifth Circuit has "consistently held

---

[1] The *Menke* court did not comment on the parties' agreement that their warrant did not
cover the automobile at issue. *Menke*, 468 F.2d at 22. Both in the district court and on appeal,
the warrant in *Menke* was described as limited to the house. *See id*.; *see also United States v.
Menke*, 339 F. Supp. 1023, 1026 n.4, 1027 (W.D. Pa. 1972), *rev'd*, 468 F.2d 20 (3d Cir. 1972)
(noting that the "warrant to search the *premises of the house* . . . made no mention of any
automobiles.") (emphasis added). *Menke* is thus inapplicable here.

that a warrant authorizing a search of 'the premises' includes vehicles parked on the premises." *United States v. Fields*, 380 F. App'x 400, 404 n.22 (5th Cir. 2010) (quoting *United States v. Singer*, 970 F.2d 1414, 1418 (5th Cir. 1992)).  The parties do not dispute that the 4Runner belonged to Perez. The search of the 4Runner was thus within the scope of the warrant if the vehicle was on the premises at the time.

Perez concedes that the 4Runner was on her private driveway during the search.  (Def.'s Mem. of Law 14.)  *Cf. United States v. Russell*, Crim. No. 08-545, 2009 WL 466515, at *7 (N.D.N.Y. Feb. 24, 2009) (finding search complied with Fourth Amendment where warrant authorized search of premises including curtilage and vehicles on property, and defendant did not argue that vehicles "searched were not located on the premises").  The warrant in this case adequately described the premises where the agents found the 4Runner.  Because the vehicle was located "within the warranted premises," it was subject to search pursuant to that warrant.  *See United States v. Gamboa*, 439 F.3d 796, 807-08 (8th Cir. 2006).

### B.      Perez's Motion in Limine

Defendant also moves to exclude evidence of six mailboxes the Government seized from her basement during the search of her home.  She concedes that the mailboxes are relevant, seeking exclusion solely under Federal Rule of Evidence 403.  (Def.'s Mot. in Limine 1.)

The Government argues that the mailboxes are highly probative of Defendant's guilt, as circumstantial evidence of Defendant's alleged mail theft scheme.  Specifically, the Government represents that it will offer evidence that Defendant stole mail by having it sent to abandoned or vacant homes.  It also asserts that Rivera will testify that Defendant formerly had ten mailboxes in her basement, suggesting that Defendant "was using several mailboxes on abandoned or vacant homes

6

on the date the search warrant was executed." The mailboxes had double-sided tape affixed to them; the Government suggests the jury may thus infer that Defendant intended to use the mailboxes. (Gov.'s Opp'n 5-6.)

Defendant offers no argument on this point beyond her assertion that the mailboxes' "probative value is far outweighed by the danger of unfair prejudice." (Def.'s Mot. in Limine 1.) Evidence of guilt is necessarily prejudicial; it need not, however, trigger exclusion under Rule 403. *See United States v. Blyden*, 964 F.2d 1375, 1378 (3d Cir. 1992). The mailboxes are admissible.

## IV.     CONCLUSION

The search of Perez's 4Runner was within the scope of a valid search warrant. The Court therefore denies Perez's motion to suppress. The Court will also deny Perez's motion in limine, as she has not established that the evidence at issue would be unfairly prejudicial. An Order consistent with this Memorandum will be docketed separately.